McALESTER-EDWARDS COAL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4490. Promulgated March 14, 1928.

*Charles H. Garnett, Esq.*, for the petitioner.
*Benjamin H. Saunders, Esq.*, for the respondent.

OPINION.

GREEN: In this proceeding the petitioner has alleged that the respondent committed a number of errors in the computation of its income and excess-profits taxes for the years ended June 30, 1920, 1921, and 1922. We will discuss these alleged errors in the order in which they have been previously stated.

The petitioner contends that the fair market value of the mining leasehold as of March 1, 1913, was $250,000 while the respondent has determined the value to be $103,582, and that the value of the plant, equipment, buildings and development on this leasehold as of March 1, 1913, was $120,022.53 while the respondent has determined a value of $94,057.92. F. B. Drew, treasurer and general manager of the petitioner, in his testimony as to the value of the leasehold and the plant, development and equipment thereon, placed a value on the leasehold of from $200,000 to $260,000. The value of $260,000 was based on the theory that on March 1, 1913, the leasehold was worth at least five times its cost in 1906. There were no sales of similar properties around March 1, 1913, other than the sale of two-thirds of the stock of the Melby-Dow Coal & Mining Co. which occurred in 1912. The Melby-Dow property, which was 16 miles distant from the mines of the petitioner, was held under a similar lease, contained the same number of acres, had the same number of openings, was on the McAlester seam of coal, served the same territory and had a similar production as the mines of the petitioner. The Melby-Dow Coal & Mining Co. had exhausted more of its crop coal and the McAlester seam of coal at their property was from 4 to 8 inches less in thickness than at the mines of the petitioner. The two-thirds interest in this corporation was sold for $200,000. It was adduced at the trial that the Melby-Dow Coal & Mining Co. claimed $249,000 as the March 1, 1913, value of their plant, equipment, buildings and development.

Evidence was also introduced showing the monopolistic character of the leases on the McAlester seam of coal on account of the fact that after 1912 the Government discontinued the making of coal leases on this seam. Drew also testified that the plant, equipment, buildings and development were carried on the books of the petitioner at $150,000, that this sum should be depreciated by $30,000 and that in his opinion $120,000 represented the value of these items.

The respondent offered no evidence to refute the testimony introduced by the petitioner that the value of the leasehold was $200,000 and that the value of the plant, equipment, buildings and development on the same was $120,000 as of March 1, 1913, and we have found these to be the values.

As to the amount of coal reserves in the leasehold as of March 1, 1913, it was admitted that the available coal could not be exhausted during the term of the lease. The principal factor to be considered is the amount of coal that could reasonably be expected to be mined and sold during the remaining life of the lease. The respondent in making his estimate used 80,000 tons per year as the estimated production for remainder of the lease in arriving at the total of 1,280,000 tons. In 1913, using the experience of the prior six years, an average of 70,000 tons per year had been produced. The petitioner at that time had two openings and contemplated a third opening which was later completed. It also made a fourth opening, but this opening was in the same territory as opening No. 2 and did not increase the petitioner's production. In 1913 the future sales of the petitioner were difficult to estimate on account of the fact that oil pools had been discovered which interfered with the possible sales of coal to railroads and other users in the territory. Labor troubles were known to be a troublesome factor in the matter of production. The petitioner's production record for the years 1907 to 1925, inclusive, which shows an average production of approximately 84,000 tons, is not, under the circumstances, determinative of the amount of the coal reserves as of March 1, 1913, but it is proper to use such figures in checking the respondent's estimate. In the light of all the facts known on March 1, 1913, we are of the opinion that the respondent's determination of the amount of coal reserves should not be disturbed.

As to the fourth assignment of error, we have found that the March 1, 1913, value of the depletable and depreciable properties consisting of leasehold, development and equipment, was $320,000. This amount divided by the estimated tons of coal to be mined during the term of the lease, which we have found to be $1,280,000 tons, gives the combined unit rate of depletion and depreciation which, multiplied by the number of tons of coal mined during any given year, will equal the combined amount of depletion and depreciation deductible from gross income during that year.

Assignments of errors five and six deal with invested capital. We are not advised in the record as to the action taken by the respondent. In the case of assets acquired prior to March 1, 1913, depletion for invested capital purposes and depletion for the purpose of computing the annual deduction from income may be two totally different things and should never be confused. The only amount of depletion or depreciation which should be deducted from invested capital is the amount of depletion and depreciation computed on the basis of cost. To the extent that the respondent has reduced invested capital by any amount in excess of such depletion and depreciation based on cost, he is in error and the invested capital determined by him should be increased by the amount of such realized appreciation.

The seventh assignment of error deals with the income of lessees of Indian lands. The Supreme Court in the case of *Heiner* v. *Colonial Trust Co.*, 275 U. S. 232, decided November 21, 1927, holds that the income derived from a lease of restricted Indian lands is not exempt from Federal taxation. The petitioner's income was derived from the leases of unallotted tribal lands of the Choctaw and Chickasaw Indians, made with the approval of the Secretary of the Interior, and accordingly, the respondent's determination that such income is taxable is correct. See *Terrell Co.* v. *Commissioner*, 9 B. T. A. 1131.

> *Judgment will be entered on 15 days' notice, under Rule 50.*